UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC J. WILSON, | ) |
| Petitioner, | ) |
| v. | ) No. 1:18-cv-02030-JMS-DLP |
| WENDY KNIGHT, | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Eric Wilson's petition for a writ of habeas corpus challenges his conviction in a prison disciplinary proceeding identified as CIC 18-03-0060. For the reasons explained in this Entry, Mr. Wilson's petition is **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

Mr. Wilson is an inmate at the Correctional Industrial Facility, where the events underlying this habeas petition took place. In November 2017, Mr. Wilson was the plaintiff in a civil rights case in this Court. *See Wilson v. Knight*, No. 1:17-cv-01326-TWP-DML. On November 27, 2017, Officer Bruce Schepper, the law library supervisor, wrote a conduct report alleging that Mr. Wilson made a counterfeit order from this Court and presented a request to have it printed on November 22, 2017. Dkt. 13 at 16 (*ex parte*). According to the conduct report, the counterfeit document was purported to be an order by Judge Pratt granting Mr. Wilson an extension of a summary judgment briefing deadline. *See id.* at 16, 21. Officer Schepper believed Mr. Wilson intended to use the extended deadline as a basis to request additional time in the law library. *See id.* at 16.

The document Mr. Wilson presented to Officer Schepper has been filed *ex parte*. Several attributes of the document would alert a reader familiar with this Court's written orders that it was likely illegitimate. The caption states that the action is proceeding in the "Southern District of *Indinan*, Indianapolis *Devision*." *Id*. at 8. It repeatedly commits the same punctuation error:

- "The plaintiff alleges that he is not provided sufficient time in his *facilities* law library . . . ."
- "This court finds that the existence of the lapse in given time between the *parties* ability to practice law . . . . ."
- "In accordance with the *plaintiffs* rights under the constitution . . . ."
- "*Plaintiffs* request for extension of time is hereby granted . . . ."

*See id.* The electronic docketing data in the header of Mr. Wilson's document differs from the Court's usual format. *See id.* Finally, the document presented on November 22, 2017, does not feature an image of Judge Pratt's handwritten signature on the final page like any other Order from this Court. Instead, it features a "FILED" stamp on the first page with a signature that appears to

have been typed on a keyboard. *See id.* And the "FILED" stamp is dated November 23, 2017—a date that obviously had not occurred as of November 22. *Id.*

A brief review of the docket in this case also makes clear that the document Mr. Wilson presented on November 22, 2017, was not generated by the Court. The document is identified as filing no. 24, which had already been docketed on September 1, 2017. *See id.* at 9. Additionally, the document's header shows that it was filed on November 14, 2017, but the docket shows that no documents were filed within eight days of November 14. *See id.* at 8; no. 1:17-cv-01326-TWP-DML.

Officer Schepper recognized many of these features, contacted the Court, and confirmed that the document Mr. Wilson presented to him had not been docketed by Judge Pratt. Officer Schepper drafted his conduct report and contacted Internal Investigations, which asked him to refrain from filing the conduct report so it could further investigate the allegations against Mr. Wilson. *See* dkt. 13 at 3.

Investigator Ashley Mills completed that investigation. *See id.* at 2–4. Investigator Mills interviewed Mr. Wilson, who denied ever seeing the document before. *See id.* at 3. However, Investigator Mills matched the signature on the print request form used to print the document to Mr. Wilson's signature on a different document. *See id.* Based on that investigation, Investigator Mills completed a conduct report on March 5, 2018, that charged Mr. Wilson with violating Code A-100, which punishes inmates' violations of federal, state, or local law. Dkt. 10-1. Investigator Mills determined that Mr. Wilson's conduct amounted to "counterfeiting" in violation of Indiana Code § 35-43-5-2. (The conduct report mistakenly refers to Indiana Code § 35-43-3-5, which does not exist, but nevertheless refers to counterfeiting.) Dkt. 10-1.

Mr. Wilson received notice of the charge through a screening report on March 7, 2018. Dkt. 10-2. Mr. Wilson requested to call Officer Schepper as a witness and stated that he wished to ask him two questions:

- How were you made aware and how did you come in possession of this document?

- Once you became aware of this document was fraudulant what prevented you from writing a conduct report at that moment?

*Id.* Mr. Wilson also asked to review the law library's surveillance video from 1:50–2:50 P.M. on November 22. *Id.* Mr. Wilson asserted that the video would show that he "never gave Ofc. Schepper a request slip" and that "the clerks are the ones who handle any printing." *Id.*

Officer Schepper prepared a written statement explaining that he received the document from Mr. Wilson, suspected it was fraudulent because of the spelling errors, and verified with Court staff that the document he received was not issued by the Court. Dkt. 10-3. Officer Schepper explained that he drafted his conduct report at that time and forwarded it to Internal Investigations for further investigation. *Id.*

The hearing officer did not permit Mr. Wilson to review the surveillance video, but he did prepare a written summary that was provided to Mr. Wilson. The summary states:

> I, Sgt. J. Pardue, reviewed the video footage for case number: CIC 18-03-0060. During the video review offender Wilson #108386 can be seen entering the Law Library at 1:56:04 pm and walks over to the computer located in the back row and takes a seat. He can clearly be seen on camera sitting at the computer until 2:21 :23 pm. ,Wilson then gets up from the computer and walks over to the offender Law clerk Beatty #876321. While Wilson was at the Law clerk's desk he can be seen filling out a slip of paper and dropping it into the mail tray. Wilson then walks back to the computer he was working at. At 2:28:55 pm offender Wilson can be seen walking to the law clerk's desk again. At 2:35:30 pm offender Beatty gets up from his desk and enters the officer's work area. When offender Beatty exits the officer's work area he has a document in his hand that brings over to offender Wilson. Beatty can then be seen on video showing offender Wilson the document. After looking at the document offender Wilson accepts it from offender Beatty and then goes back to the computer he was working on. At 2:44:30 pm offender Wilson approaches the

> entrance of the officer's work area and can be seen speaking with him. The offender then goes to his seat once again until line movement.

Dkt. 10-4.

The Court has reviewed this video, which was filed *ex parte*. *See* dkt. 29. The summary is accurate. The Court adds that, when Mr. Wilson approaches the entrance of the officer's work area, he appears to show a sheet of paper to whomever is inside. He then hands the paper to Mr. Beatty before returning to his seat.

Mr. Wilson was convicted at a disciplinary hearing on March 23, 2018. *See* dkt. 10-7. Mr. Wilson presented lengthy written statements and other documents in his defense. *See* dkt. 10-9. The hearing officer's report states that he reviewed that evidence, along with the confidential investigation report, staff reports, witness statements, and the video, and determined that a preponderance of the evidence showed that Mr. Wilson either committed the criminal act of counterfeiting or conspired or attempted to do so. *See id.* (referencing Ind. Dep't of Corr., *Adult Disciplinary Process, App'x I: Offenses*, §§ 100 (Violation of Law) and 111 (Conspiracy/Attempting/Aiding or Abetting) (June 4, 2018). The hearing officer assessed sanctions, including the deprivation of 120 days' earned credit time and a demotion in credit-earning class, the imposition of which was suspended. Dkt. 10-7. Mr. Wilson's administrative appeals were unsuccessful. *See* dkts. 10-10, 10-11.

### III. Analysis

Mr. Wilson asserts several challenges to his conviction. They may be categorized broadly as arguments that the evidence against him was insufficient, that he was denied evidence, and that

the hearing officer wrongly relied on evidence from a confidential informant. For the reasons discussed below, none of these challenges entitles Mr. Wilson to habeas relief.[1]

A.      **Sufficiency of the Evidence**

Mr. Wilson presents several arguments that, if accepted, would result in a finding that his conviction was not supported by sufficient evidence. "A hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

When assessing the sufficiency of the evidence in a habeas proceeding, the Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Instead, the Court must limit its inquiry "to whether *any reliable evidence* exists to support the conclusions drawn by the hearing officer." *Id.* (emphasis added).

---

[1] The Court notes the defendants' assertion that Mr. Wilson failed to exhaust certain of these arguments in his administrative appeals. In *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997), "the Supreme Court noted that its cases have 'suggest[ed] that the procedural-bar issue should ordinarily be considered first'" but also clarified that "it did 'not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (quoting Lambrix, 520 U.S. at 525). The Court finds that the nature of Mr. Wilson's arguments allows them to be resolved more simply on the merits than on the exhaustion issue.

Mr. Wilson was charged with and convicted of Code A-100, "Violation of Law." An inmate violates Code A-100 by violating "any federal, state or local criminal law." *Adult Disciplinary Process, App'x I: Offenses*, § 100.

Investigator Mills' conduct report alleges that Mr. Wilson violated Indiana law by counterfeiting in violation of Indiana Code § 35-43-3-5. Dkt. 10-1. As Mr. Wilson notes, there is no Indiana Code § 35-43-3-5.[2] But Investigator Mills' report of investigation correctly cites the proper provision, Indiana Code § 35-43-5-2. *See* dkt. 13 at 4. Additionally, Investigator Mills' conduct report, dkt. 10-1, makes clear that the state-law crime underlying Mr. Wilson's charge is counterfeiting.

"Counterfeiting" is "knowingly or intentionally mak[ing] or utter[ing] a written instrument in such a manner that it purports to have been made: (A) by a different person, (B) at another time, (C) with different provisions, or (D) by authority of one who did not give authority." Ind. Code § 35-43-5-2(a)(1). A "written instrument" is "a paper, a document, or other instrument containing written matter and includes money, coins, tokens, stamps, seals, credit cards, badges, trademarks, medals, retail sales receipts, labels or markings (including a universal product code (UPC) or another product identification code), or other objects or symbols of value, right, privilege, or identification." Ind. Code § 35-43-5-1(t). The Indiana Supreme Court has clarified that "a written instrument could be an instrument containing written matter or it could be an object or symbol of

---

[2] The respondent does not acknowledge this error and in fact mistakenly cites another nonexistent Indiana Code provision—§ 25-43-3-5—in reproducing Investigator Mills' conduct report. *See* dkt. 10 at 3. The respondent never correctly identifies the counterfeiting statute, states the elements of the offense, or discusses how the evidence shows that Mr. Wilson violated it. These are fundamental components of any response to a sufficiency-of-the-evidence challenge. Their omission carries little consequence in this case because the sufficiency of the evidence is so clear. Nevertheless, the respondent should not rely on the Court to connect the legal dots for her in future cases.

value, right, privilege, or identification—whether or not such object or symbol contains any writings or markings." *An-Hung Yao v. State*, 975 N.E.2d 1273, 1279 (Ind. 2012).

The phony court order itself is evidence that Mr. Wilson made a document containing written matter that he purported to be made by a different person (Judge Pratt) and pursuant to her authority. *See* dkt. 13 at 8. Officer Schepper's conduct report further documents that Mr. Wilson submitted a request to have the phony order printed. *See id.* at 6. This alone is "some evidence" that Mr. Wilson committed counterfeiting.

Mr. Wilson argues at multiple points that Investigator Mills' conduct report is demonstrably false because it alleges that he "handed" the phony court order to Officer Schepper and other evidence shows that this is untrue. *See* dkt. 1 at 2, 3, 4. In fact, the conduct report alleges that Mr. Wilson presented a request to print the phony order and that, once it was printed, Officer Schepper became skeptical as to its authenticity. *See* dkt. 10-1. This allegation is supported by the print request, the phony order, and Officer Schepper's conduct report, all of which appeared in the confidential investigation file and were presented to the hearing officer. *See* dkt. 10-7; dkt. 13 at 7, 8, 16. Mr. Wilson did not need to "hand" the phony order to Officer Schepper to commit counterfeiting. These documents are also "some evidence" supporting the conclusion that Mr. Wilson created the counterfeit order.

Mr. Wilson makes much of the fact that he is accused of presenting the print request for the phony order November 22, 2017, but the conduct report charging him with counterfeiting was not generated until March 6, 2018. This does not undermine the sufficiency of the evidence against him. Officer Schepper documented the incident in an e-mail to the Court's staff on November 22, the day Mr. Wilson presented the print request. *See* dkt. 13 at 12. After verifying that Judge Pratt did not issue the order, Officer Schepper drafted a conduct report on November 27. *Id.* at 16.

8

Rather than initiate a disciplinary proceeding, he referred the matter to Internal Investigations for further investigation and determination of whether criminal charges were warranted. *See id.* at 2–3. Investigator Mills compiled his conduct report and initiated the disciplinary proceeding after the investigation was complete. This thorough process does not detract from the sufficiency of the evidence against Mr. Wilson. Dkt. 10-1. If anything, it enhances its reliability.

Finally, Mr. Wilson argues that the video evidence, as summarized by the hearing officer, shows that he is innocent. The Court disagrees. As noted above, the Court finds the hearing officer's summary of the video to be accurate. The video shows, and the summary documents, that Mr. Wilson used a computer in the law library on November 22, filled out a slip of paper and placed it in a mail tray, returned to his computer, received a sheet of paper from the law clerk, returned to his computer, spoke to someone in the officer's work area, and then returned to his computer a final time. *See* dkt. 10-4. This evidence does not undermine the conclusion that Mr. Wilson created the phony court order and requested that it be printed.

**B.     Withholding Evidence**

Mr. Wilson argues that his due process rights were violated because he did not receive a copy of the statement he requested from Officer Schepper before his hearing. *See* dkt. 1 at 2–3. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of

9

guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Officer Schepper's witness statement answers Mr. Wilson's questions regarding how he became aware of the phony Court order and why he did not write a conduct report immediately. *See* dkt. 10-2, 10-3.Officer Schepper stated:

> The document was received from Offender Wilson on 11/22/2017, one day befor Thanksgiving. I became aware of the documents' possible fragulance on 11/22/2017 because of some mis-spelled words and the biggest one was that it had a date of court entry of 11/23/2018 ·making it imposible for Offender Wilson to have this document on 11/22/2017. Conduct report was not writing at that time because verification from Court Clerks was needed to build a case. On 11/27/2017 the Court Clerk verfied by e-mail that the document was not part of their court records. Conduct report was then produce and forwarded along with, document and e- mail string from court to I & I for Investigation per Investigator Poer for possible outside case[misspellings in original.]

Dkt. 10-3.

This document is not exculpatory. It is evidence that Mr. Schepper received the document on November 22, suspected it was not authentic, contacted the Court staff to investigate further, and then forwarded his documentation for further investigation and possible referral for prosecution. None of this information undermines the hearing officer's decision.

**C.     Use of Evidence from Confidential Informant**

Mr. Wilson finally alleges that some of the evidence against him was gleaned from a "confidential informant," whom he believes to be the inmate law clerk working in the law library on November 22. *See* dkt. 1 at 5. None of the evidence in the record, including the confidential investigation file, refers to a confidential informant or any information obtained from the law clerk. And even if it did, Mr. Wilson has not explained why such evidence would be either exculpatory or improper.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Wilson's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, his petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/19/2019

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ERIC J. WILSON
108386
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Abigail T. Rom
INDIANA ATTORNEY GENERAL
abby.rom@atg.in.gov